Raymond W. COLLINS, et al.

v.

SEAFARERS PENSION TRUST, et al.

Civ. No. Y–86–591.

United States District Court,
D. Maryland.

July 17, 1986.

Kevin A. Dunne, Geoffrey S. Tobias, Baltimore, Md., Robert J. Lichtenstein, James G. Rosenberg, and Michael C. Olmsted, Philadelphia, Pa., for plaintiffs.

Harriet E. Cooperman, Baltimore, Md., and Leslie Tarantola, Camp Springs, Md., for defendants Seafarers Pension Trust and Trustees I–VII.

Richard Gabriele, New York City, for defendants Seafarers Intern. Union and Frank Drozak.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This is an action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, alleging that defendant Seafarers Pension Trust and its trustees (John Doe I—John Doe VII) violated the terms of its trust and ERISA by eliminating early normal retirement benefits and by reducing normal retirement benefits. Plaintiffs are an employer which was a contributor and signatory to the pension plan, Sonat Marine, Inc. and Sonat Marine Maryland, Inc. (hereinafter referred to singularly as "Sonat"), and four retired boatmen who are plan participants, Raymond W. Collins, Eugene Maier, Ted Pieden, and John T. Taylor.

Defendants filed a motion to dismiss or for a more definite statement, alleging that plaintiffs fail to state a claim upon which relief may be granted, and that Sonat lacks standing and a jurisdictional basis for its claim. This motion will be decided on memoranda without a hearing. Rule 6, Rules of U.S.D.C., D.Md.

## FACTS

The Seafarers Pension Trust ("Trust") provides a "normal pension" of $440, which can be obtained upon reaching the age of 62, if the employee acquired at least 5,475 days of service. If less days were accumulated, then the employee's pension is reduced proportionately. The Trust also provides for an "early normal pension" of $440 for employees at age 55, if at least 7,300 days of service were accumulated. Prior to 1978, the total number of days of service were calculated by combining the number of days of "contributing time" (employment during the time the employer contributed to the Trust) with the "past service credits" (number of days of employment prior to the date of the employer's initial contribution to the Trust). Effective January, 1978, the plan was amended to exclude past service credits from the calculation of days of service, for participants whose employers voluntarily ceased to be Trust signatories.

The four employee-plaintiffs all retired in 1984 or 1985. Plaintiffs Collins and Taylor were employed with Sonat, until they retired at age 55 and applied for early normal pensions. Under the pre–1978 Trust rules, both would have been eligible for the pension because the combination of contributing time and past service credits exceeded 7,300 days.

In May, 1985, Collins and Taylor were notified that they were not entitled to past service credits, without which they did not qualify for the early pension. Apparently, the credits were terminated because Sonat had voluntarily ceased to be a Trust signatory. The effect was to eliminate eligibility for the early normal pension and to reduce the amount of normal pension to be received in the future.

Plaintiffs Pieden and Maier were employed with Dixie Carriers, Inc. ("Dixie"), until they retired at age 62. When applying for their normal pensions, they learned that their past service credits would not be included in the calculation because Dixie was no longer a signatory. This reduced Pieden's pension to $368.41, and Maier's to $387.38 per month, instead of the normal pension rate of $440.00 which they would have received under the pre–1978 rules.

Sonat and Dixie are both in the marine transportation business, and employed the individual plaintiffs as tug captains or barge captains. Sonat became a Trust signatory in 1960. Taylor began working for Sonat in 1946, and Collins began working for Sonat in 1945. Dixie became a Trust signatory in 1962 and employed Maier in 1957. Pieden alleges that he began working for Dixie in 1943, but his work records are missing for the years prior to 1958. From the pleadings, there appears to be a factual dispute about whether Sonat and Dixie continue to be signatories of the Trust.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Count II and Count I of the complaint both assert that the 1978 amendment was contrary to the terms of the Trust and was in violation of ERISA. Count II specifies two specific ERISA provisions, and the parallel Internal Revenue Code provisions, which the defendants allegedly violated: ERISA §§ 203(c)(1)(B), 302(c)(8), 29 U.S.C. §§ 1053(c)(1)(B), 1082(c)(8); and IRC §§ 411, 412.[1]

Plaintiffs' legal basis for Count I is unclear, though the allegation focuses on a violation of the terms of the Trust. To the extent that plaintiffs intend a common law claim grounded in contract, the claim must be dismissed because it would be cognizable under ERISA and preempted. 29 U.S.C. § 1144. Yet plaintiffs provide no ERISA claims in Count I which are distinct from Count II. Thus Count I of the complaint will be dismissed. Rule 12(b)(6), Fed. R.Civ.P.

Count III states a common law claim for misrepresentation and consequent detrimental reliance, against Frank Drozak, the Seafarers International Union, and the Trust. Drozak and the Union have already been dismissed as defendants to this action. The only portion of Count II relevant to the remaining defendants is ¶ 57, which alleges that "Maria Hawthorne of the Trust Claims Department told Taylor that by completing an additional 28 days of service, which he subsequently did, he would be entitled to an "Early Normal Pension Supplement" under ... the Trust." This is similar in nature to an action under ERISA based on a fiduciary duty, and that common law claim is preempted by ERISA. 29 U.S.C. § 1144. Thus Count III will also be dismissed. Rule 12(b)(6), Fed.R.Civ.P.

Defendants argue that Count II also fails to state a claim because plaintiff's benefits were merely reduced, rather than terminated. Defendants correctly assert that ERISA does not dictate "a particular amount or a method for calculating the benefits." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). But once a plan adopts its own calculation for benefits, those benefits may not be reduced in absence of compliance with protective procedures defined by ERISA. 29 U.S.C. § 1054(g). Accrued

---

**1.** Defendants argue that Count II violated the federal rules of pleading, Rules 8(a), 10(b), Fed. R.Civ.P., because numerous violations of ERISA are alleged but only two statutory references are provided. This Court interprets the pleading as alleging violations of only the specified statutory provisions. Consideration of additional violations would require an amended complaint specifying statutory provisions.

benefits may be reduced by amendment only if the procedures defined by 29 U.S.C. § 1082(c)(8) are followed, including mandatory notice to the Secretary of Labor and a showing of substantial business hardship. If the amendment alters the vesting schedule, then eligible participants may elect to compute their benefits without regard to the amendment. 29 U.S.C. § 1053(c)(1)(B). Thus accrued benefits are protected from reduction under ERISA.

In the instant case, pleadings allege that the cancellation of past service credits was accomplished by amendment, with the effect of reducing benefits. Plaintiffs assert that the amendment was passed without compliance with 29 U.S.C. § 1082(c)(8). If the benefits were "accrued" then compliance with § 1082(c)(8) is required, and plaintiffs state a claim upon which relief could be granted by alleging these facts. *Cf. Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552 (D.C.Cir.1984) (where plan contained clause allowing cancellation of past service credits, there was no amendment and no procedural requirement).

There is some question whether the early normal pension benefits in this case are "accrued benefits," which are nonforfeitable and cannot be reduced under ERISA. An "accrued benefit" is defined as an annual benefit commencing at normal retirement age. 29 U.S.C. § 1002. This definition encompasses the normal pension benefits to be received upon reaching age 62 which were reduced for plaintiffs Maier and Pieden. With respect to Collins' and Taylors' claims to the early retirement benefits, courts have differed as to whether those benefits should be viewed as accrued.

In *Sutton v. Weirton Steel Division of National Steel Corp.*, 724 F.2d 406 (4th Cir.1983), the court held that accrued benefits do not encompass unfunded, contingent early retirement benefits. But that case is distinguishable from the instant case because in *Sutton* the benefits were contingent on a plant shutdown and would have been funded out of the employer's corporate treasury. In this case, participants' contributions fund the early retirement benefits, and those benefits are not contingent.

Other circuits have touched on a similar question. The Third Circuit concluded that benefits to be received prior to normal retirement age were somehow "ancillary," and not entitled to the protection of an accrued benefit. *Hoover v. Cumberland*, 756 F.2d 977 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 135, 88 L.Ed.2d 1111; *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, 763 F.2d 574 (3d Cir.1985). But the Second Circuit reached the opposite conclusion, in holding that the elimination of early retirement benefits stated a claim for relief under ERISA. *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1414 (2d Cir.1985). The latter result was reached after a concession that "decisional law sheds little light on the issue" and instead the court relied upon legislative history and IRS revenue rulings.

■ Although of limited value for its general language, the legislative history does provide some guidance.

> The term "accrued benefit" refers to *pension* or *retirement* benefits and is not intended to apply to certain ancillary benefits, such as medical insurance or life insurance, which are sometimes provided for employees in conjunction with a pension plan, and are sometimes provided separately. To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income ... Generally an individual's "accrued benefit" under a defined benefit plan is to be expressed in the form of an annual benefit commencing at normal retirement age.

H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4670, 4726 (emphasis added); *see also* H.Cong.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5054. Under this description, a funded, noncontingent early re-

tirement benefit more closely fits the category of pensions, it is not merely an ancillary benefit.[2] Thus an early retirement pension which is an integrated part of a retirement plan, would fall within the scope of accrued benefits. Plaintiffs stated a claim in Count II of the complaint by asserting that these benefits were improperly reduced.

## EMPLOYER'S STANDING AND PENDENT PARTY JURISDICTION

Defendants argue that Sonat, an employer, has no standing to sue under ERISA, which does not specifically provide for suit by employers. *See* 29 U.S.C. § 1132(a). Plaintiff relies upon the general test for standing to sue for violations of a federal statute, in which a plaintiff must a) suffer an injury in fact; b) fall within the zone of interests protected by the statute; and c) show that the statute does not preclude the suit. *Data Processing Service Organization v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1304 (9th Cir.1982) (finding that employer fell within "zone of interest" of ERISA). There is no need to reach the issue of whether an employer can ever sue under ERISA, because in this case Sonat failed to allege in the complaint any injury in fact. Therefore, Sonat has no standing to sue under the federal statute. *Data Processing,* 397 U.S. at 153, 90 S.Ct. at 829. Although Sonat did refer to possible monetary loss in its memorandum in opposition to the motion to dismiss, its assertion was not grounded in any facts stated in its complaint. At best, Sonat is attempting to assert a claim based on "general allegations of adverse impact" and on the rights of its employees. *See Fentron,* 674 F.2d at 1304.

Although Sonat requests that this Court exercise pendent jurisdiction over its claim despite lack of standing under the federal statute, Sonat has no remaining claims over which this Court can exercise jurisdiction. The common law contract claims (Count I) cannot be asserted by Sonat based on the complaint, because Sonat has not stated a contract claim. In its memorandum in opposition to the motion to dismiss, Sonat implies that it may be a third-party beneficiary of the Trust agreement, but such vague allegations outside of the complaint cannot be construed as stating a claim. Likewise there is no indication that Sonat was the recipient of or injured by misrepresentations. Thus Sonat's claims will be dismissed. Rule 12(b)(6), Fed.R.Civ.P.

Accordingly, all of the claims asserted by Sonat will be dismissed and Counts I and III will be dismissed.

---

**2.** The *Amato* court took issue with an interpretation of the legislative history which excludes any benefits received before normal retirement age from the class of "accrued benefits." This Court concurs with the *Amato* court's reading of the legislative history in that respect. *See Amato,* 773 F.2d at 1410.