Raymond W. COLLINS, et al.

v.

SEAFARERS PENSION TRUST, et al.

Civ. No. Y–86–591.

United States District Court,
D. Maryland.

May 19, 1987.

Kevin A. Dunne, Geoffrey S. Tobias, Baltimore, Md., Robert J. Lichtenstein, Michael C. Olmsted, Scott Patterson, and Donna Windquist, Philadelphia, Pa., for plaintiffs.

Harriet E. Cooperman, Baltimore, Md., and Leslie Tarantola, Camp Springs, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

I. *Facts*

Four retired tugboat and barge captains—Raymond W. Collins, John Taylor,

Eugene Maier, and Ted Pieden—filed this suit seeking pension benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA).

Collins and Taylor were employed by Sonat, a marine transport firm, until they reached age 55 and applied for early normal pensions. Maier and Pieden were employed by Dixie Carriers, another marine transport firm, until they retired at age 62 and applied for normal pensions. Both Sonat and Dixie were signatories of the Seafarers Pension Trust (Trust), and all four plaintiffs were participants in the Trust's Seafarers Pension Plan (Plan).

In this action, plaintiffs challenge a 1978 amendment to the Plan that changed the method used to calculate pension benefits and early pension eligibility. The Plan provides a "normal pension" of $440 per month, which can be obtained at age 62 if an employee has accumulated at least 5,475 days of service. If fewer days are accumulated, then the employee's pension is reduced proportionately. The Plan also provides for an "early normal pension" of $440, which can be obtained at age 55 if at least 7,300 days of service had been accumulated. Prior to the 1978 amendment, the total number of days of service was calculated by combining "contributing time" (number of days of employment during the time the employer contributed to the Plan) with "past service credits" (the number of days of employment prior to the date of the employer's initial contribution to the Plan). As of January 1978, the Plan was amended to exclude past service credits from the calculation of days of service for participants whose employers voluntarily stopped making contributions to the Trust. All four plaintiffs retired in 1984 or 1985. Their employers, Sonat and Dixie, had previously withdrawn completely or in part from the Plan and had stopped making contributions on their behalf to the Trust. When their employers withdrew, the plaintiffs lost "past service credit" pursuant to the 1978 Plan amendment.[1] For example, under the pre–1978 Plan rules, Collins and Taylor would have been eligible for early normal pensions because both had more than 7,300 days of contributing time and past service credits. In fact, the Trust initially calculated all four plaintiffs' benefits under the pre–1978 rules and later corrected its calculations by subtracting past service credits. The result was that neither Collins nor Taylor was eligible for the early normal pension and the pensions they will receive at age 62 were reduced. Similarly, the loss of past service credits reduced Pieden's and Maier's pensions significantly.

Plaintiffs and defendants—the Trust and its trustees—have moved for summary judgment on Count II, which alleges that the 1978 amendment to the Plan violated substantive and procedural provisions of ERISA. Defendants have also moved for summary judgment on Count I, which alleges that the adoption of the 1978 amendment was arbitrary and capricious and thus was a breach of trustees' fiduciary duty. A hearing on these motions was held on April 15, 1987.

## II. *The 1978 Plan Amendment*

Plaintiffs contend that the amendment stripped them of past service credits and corresponding pension benefits after those benefits had "vested," in violation of ERISA provisions in effect at that time.[2] This contention is premised, however, on a mischaracterization of the benefits at issue and a misunderstanding of the scope of ERISA's protection.

---

1. Generally, when an employer joins the Trust, its employees are given "past service credit" for the time they worked for that employer before it joined the fund. These credits create an unfunded liability for the Trust. This liability is amortized as the Trust collects contributions from employers in excess of the actual cost of pension coverage. When an employer withdraws from the Trust and stops contributing before its employees' past service credits are amortized, the Trust cancels those credits in order to eliminate the corresponding liability.

2. Specifically, plaintiffs allege violations of ERISA §§ 203 and 302, codified at 29 U.S.C. §§ 1053 and 1082, and parallel Internal Revenue Code provisions, codified at 26 U.S.C. §§ 411 and 412. Plaintiffs' challenge is based on the provisions of ERISA in 1978.

## A. *"Vested" and "Accrued" Benefits*

■ Throughout their pleadings, plaintiffs fail to address the distinction between "vested" and "accrued" benefits. However, the terms have different meanings under ERISA, as *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552 (D.C.Cir.), *cert. denied,* 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984), 795 F.2d 1079 (D.C.Cir.1986) demonstrates. There, a pension fund cancelled past service credits when an employer withdrew and stopped making contributions. The employees whose benefits were reduced as a result sued the fund, contending that the effect of its action was to alter the fund's vesting schedule in violation of ERISA. The *Stewart* court discussed the distinction drawn by Congress between "vested rights" and "accrued benefits:"

> The two principles are related, but different. An employee is "vested" in a portion of his benefit when he has a *nonforfeitable* right to a given percentage of his *accrued benefit.* The "vesting schedule" specifies the time at which an employee obtains his nonforfeitable right to a particular percentage of his accrued benefit. *It does not provide any formula or schedule for determining the amount of the accrued benefit.* Thus, "vesting" governs when an employee has a *right* to a pension; "accrued benefit" is used in calculating the *amount* of the benefit to which the employee is entitled.

730 F.2d at 1561–62 (footnotes omitted) (emphasis in original).

Clearly, the distinction between "vested" and "accrued" benefits is critical. To determine whether the benefits plaintiffs seek were vested or accrued, this Court must look first to ERISA and then to the terms of the Seafarers Pension Plan.

■ Under ERISA, benefits that are nonforfeitable are deemed vested. The statute's nonforfeitability provision, § 203(a), requires only that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of *normal retirement age....*" (emphasis added). In addition, subsection (a)(1) of § 203 requires that benefits based on an employee's own contributions be nonforfeitable. 29 U.S.C. § 1053(a) and (a)(1) (1974).[3] Thus, since past service credits are not derived from employee contributions, ERISA does not require than an employee's right to benefits based on past service credits vest until that employee reaches normal retirement age.[4]

The Seafarers Pension Plan as it existed in 1978[5] apparently made no provision for the vesting of past service credits. It specified only that an employee became eligible for a pension when he reached retirement age or early retirement age and had credit for a requisite number of days of service. The Plan created no vesting requirements independent of those contained in ERISA.

■ The plaintiffs' benefits were not based on their own contributions, and they had not vested because none of the plaintiffs had reached normal retirement age in 1978. Therefore, this Court concludes that those benefits were accrued, but not vested, at the time the Plan amendment was adopted in 1978. This conclusion is consistent with the previous opinion in this case. *Collins v. Seafarers Pension Trust,* 641 F.Supp. 293 (D.Md.1986).

---

**3.** ERISA § 203 establishes minimum vesting standards that private pension plans must meet. It requires that pension plans provide that benefits become "nonforfeitable" once an employee attains normal retirement age and certain other conditions occur. If benefits are "forfeitable" after normal retirement age has been attained, the plan does not comply with ERISA.

**4.** Plaintiffs contend that because Collins and Taylor had achieved the required number of days of service to be eligible for early retirement benefits before the 1978 amendment, those benefits had "vested" and could not be taken away by a Plan amendment. However, it is clear that § 203 does not protect early retirement benefits. It is regrettable that Collins and Taylor took early retirement in reliance on the Trust's promise of immediate benefits only to lose those benefits through no act of their own, but the Trust's cancellation of benefits based on past service credits was not prohibited by ERISA.

**5.** *See* Appendix to Plaintiffs' Motion for Summary Judgment, Exhibit B.

**B.** *The Applicable Law*

The parties agree that the propriety of the Plan amendment must be determined by reference to ERISA as it existed in 1978. However, they disagree about what the Act then allowed.

The defendants argue that the original ERISA definition of "multiemployer plan" permitted plans to cancel past service credits upon employer withdrawal. The definition included plans

(iv) under which benefits are payable with respect to each participant without regard to the cessation of contributions by the employer who had employed that participant *except to the extent that such benefits accrued as a result of service with the employer before such employer was required to contribute to such plan ...*

Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, § 3(37)(A)(iv), 88 Stat. 829, 839 (1974) (amended 1980) (emphasis added). This definition would seem to contemplate cancellation of benefits based on past service credits after an employer ceased to contribute and withdrew from the plan.

Defendants argue that this definition provided authority for plans to cancel past service credits until it was recodified as § 203(a)(3)(E) in 1980. They find some support for this position in the legislative history of the 1980 ERISA amendments, which added § 203(a)(3)(E).[6] Part I of House Report 96–869, prepared by the Education and Labor Committee, stated:

*Cessation of contributions under a multiemployer plan*

Under the bill, a multiemployer plan would not fail to meet the vesting requirements of ERISA because the plan provides for the forfeiture of accrued benefits attributable to service with a participant's employer before the employer was required to contribute to the plan in the event that the employer ceases making contributions to the plan.

This is a continuation of the current law in this regard, except that this exception appears under current law in the definition of multiemployer plan.

H.Rep. 869, Part I, 96th Cong., 2nd Session, *reprinted in* 1980 U.S.Code Cong. and Ad.News 2918, 2983. Part II of the House Report, prepared by the Committee on Ways and Means, closely follows the explanatory language used in Part I but omits the second paragraph stating that the amendment will continue existing law.[7]

Plaintiffs contend that the original definition of multiemployer plan did not authorize cancellation of past service credit and that § 203(a)(3)(E) was a substantive change in ERISA rather than a recodification, and they also argue that the Ways and Means committee report, although virtually identical to the Education and Labor Report, "conspicuously omitted" and thus cast doubt on the paragraph referring to continuation of current law.

On balance, the legislative history tends to support defendants' position. The Education and Labor committee's statement that § 203(a)(3)(E) simply continued current law must be accorded some weight; it was not contradicted, but merely omitted, by the Ways and Means committee's report. Read together with the original ERISA statute, the statement suggests that can-

---

**6.** The 1978 Plan amendment would clearly be permitted under § 203(a)(3)(E)(i):

(E)(i) A right to an accrued benefit derived from employer contributions under a multiemployer plan shall not be treated as forfeitable solely because the plan provides that benefits accrued as a result of service with the participant's employer before the employer had an obligation to contribute under the plan may not be payable if the employer ceases contributions to the multiemployer plan.

**7.** The same general language is used in both of the reports in the legislative history. This lan-

guage alone does not specify whether, in 1978, ERISA permitted a plan to reduce "accrued benefits" and cancel past service credits if an employer withdrew. However, in conjunction with the introductory statement "the bill provides for additional circumstances under which *vested* benefits ... could be forfeited," it suggests that the 1980 amendment primarily concerned vested rather than accrued benefits. Presumably, accrued benefits *not yet vested,* i.e., those that had accrued to employees who had not yet reached retirement age, *could* be reduced prior to the 1980 amendment.

cellation of past service credits was implicitly permitted by § 3(37)(a)(iv) and then expressly provided for with the addition of § 203(a)(3)(E).

■ More importantly, the Fourth Circuit reached the same conclusion in *Baltimore Rebuilders, Inc. v. NLRB*, 611 F.2d 1372 (4th Cir.1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1113 (1980). In that case, a union-sponsored multiemployer pension plan included a provision for the cancellation of past service credits upon cessation of an employer's contributions. When the local union lost a decertification election, the union-sponsored plan notified the employees that they were no longer plan participants and had lost their past service credits. The employer challenged the past service credit cancellation provision, not under ERISA, but on labor policy grounds, arguing that it created improper incentives for employees to continue with the particular union that sponsored the pension program. In discussing the cancellation provision, the Fourth Circuit concluded that

> Congress has expressly recognized that such pension plans can pay pensions based on a scheme of earned and unearned work credits. 29 U.S.C. § 1002(37)(A), [the multiemployer plan definition] . . . .
>
> What Congress authorizes we cannot outlaw. It has authorized just such a scheme and we do not think a reasonable limitation on the unfunded liability represented by it can violate the Act. *See* 29 U.S.C. § 1001(b). The reasonableness of the limitation here is shown by the fact that credits are cancelled automatically when contributions end.

*Id.* at 1379. This passage suggests that the court believed a cancellation provision, virtually identical to the one at issue, to be consistent with ERISA in 1979. The court, like the authors of Part I of House Report 96–364, believed that such cancellation was permitted under the multiemployer plan definition of the original statute. Accordingly, this Court finds that the Trust and trustees did not violate ERISA when they adopted the 1978 amendment providing for cancellation of past service credits.

### III. *ERISA Amendment Procedure*

Apart from their challenge to the substance of the 1978 Plan amendment, plaintiffs also contend that the Trust failed to follow proper procedures in implementing it.

### A. *Section 203(c)(1)(B)*

Plaintiffs contend that the 1978 Plan amendment was an amendment to the vesting schedule, and as such subject to the provisions of § 203(c)(1)(B). That provision requires that, if a plan's vesting schedule is amended, certain employees have the right to have their nonforfeitable benefits computed under the previous schedule.[8]

However, this Court has determined that the benefits lost by plaintiffs and others similarly situated as a result of the amendment were accrued but not vested. Although these accrued benefits were reduced, no employee's vesting status was altered by the amendment. Counsel for the Trust represented at the hearing that, after the adoption of the amendment, all Plan participants retained the right to deferred vested benefits based on their own contributions. As the District of Columbia Circuit held in *Stewart v. National Shopmen Pension Fund*, "[s]ince the reduction in accrued benefits involved in this case does not affect the vested status of any employee, § 203(c)(1)(B) does not require that employees be offered a choice in benefit calculations." 730 F.2d at 1562.

### B. *Section 204(g)*

ERISA also provides at § 204(g), 29 U.S.C. § 1054(g), that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan,

---

**8.** Specifically, § 203(c)(1)(B) provides that, subsequent to any amendment in the vesting schedule, "each participant having not less than 5 years of service [be] permitted to elect, within a reasonable period after adoption of such amendment, to have his nonforfeitable percentage computed under the plan without regard to such amendment." Plaintiffs were not allowed to make an election.

other than an amendment described in section 1082(c)(8) of this title." The referenced section, § 1082(c)(8), ERISA § 302(c)(8), requires that notice of such a plan amendment be filed with the Secretary of Labor. The amendment cannot take effect unless approved, or not disapproved, by the Secretary within 90 days. The Secretary is not to approve an amendment unless he determines that it is necessary because of a substantial business hardship to the plan.

■ It is clear that compliance with § 204(g) was required in this case because the amendment decreased accrued benefits. What is less clear is whether the defendants properly notified the Secretary of Labor about the amendment and whether the Secretary ever made a determination of substantial business hardship. It would be inappropriate for this Court to assume the Secretary's role in deciding whether notice was proper under § 204(g) or in determining whether a substantial business hardship existed. However, the failure of the defendants to comply with § 204(g) and the justifications they have proffered for the reduction of plaintiffs' accrued benefits may properly be considered in determining whether the trustees acted in an arbitrary and capricious manner in approving the amendment and notifying the Secretary. *Accord, Stewart v. National Shopmen Pension Fund*, 795 F.2d 1079, 1083.[9]

The undisputed facts of this case make it abundantly clear that the defendants did not properly notify the Secretary of the plan amendment and that no determination of "substantial business hardship" could have been made. Defendants contend that sufficient notice was provided by an EBS–1 form filed with the Department of Labor in October 1978. A cover letter sent with the form to the Department of Labor identified it as "an amended filing due to an amendment to the plan." However, in response to the form's question "Does the amendment result in a reduction of accrued pension benefits to participants?" the box marked "No" is checked. Counsel for defendants conceded at the hearing that this response was simply incorrect.

Moreover, the cover letter is dated October 25, 1978. Defendants concede and the EBS–1 form itself indicates that the Plan amendment was to have retroactive effect to January 1, 1978. Thus, the admittedly defective "notice" on which defendants rely was sent to the Department fully ten months after the effective date of the Plan amendment. Obviously, the Secretary could not have made the required determination of substantial business hardship before the amendment became effective.

■ This defective "notice" suggests a lack of attention to detail on the part of the Trust and trustees. Nonetheless, it is a procedural rather than a substantive violation of ERISA. This Court finds that the Trust and trustees' failure to properly notify the Secretary is an insufficient basis for

---

**9.** In *Stewart,* the Court of Appeals for the District of Columbia had remanded the case so that the District Court could determine whether there was a "reasonable actuarial basis" for the trustees' decision to cancel past service credits. The trustees cancelled the credits by invoking a preexisting plan provision rather than by amending the plan, so § 204 did not apply. However, the discussion of the proper standard of review is relevant here.

On remand, the District Court dismissed the suit, and the issue in the second appeal was whether it had used the proper standard of review. The Court of Appeals affirmed the dismissal and held that the appropriate standard of review was whether the trustees' action had been arbitrary and capricious, rejecting the plaintiffs' contention that the lower court should have determined whether the cancellation of past service credits was necessary to

protect the actuarial soundness of the pension plan. The court held, in part

Judicial review of trustees' actions under this standard, like review under the analogous standard in public administrative law, is strictly limited, taking into account the expertise of professionals operating in a complex field. Courts will substitute their judgment for that of trustees only if the trustees' actions are not grounded on any reasonable basis. Choices between reasonable alternatives are for the trustees, not the courts.

*Id.* at 1083. This holding suggests that in ERISA cases judicial review should be strictly limited to the "arbitrary and capricious" standard. It follows that courts should not attempt to substitute their own judgment for that of the Secretary of Labor just as they should not attempt to substitute their judgment for that of trustees.

a finding that they acted in an arbitrary and capricious manner.

### IV. *The Trustees' Adoption of the Amendment*

■ In Count I, plaintiffs allege that the defendants' adoption and interpretation of the 1978 amendment violated provisions of ERISA § 404, 29 U.S.C. 1104. This section imposes a fiduciary duty on trustees, § 404(a)(1)(B), and requires them to administer the plan in accordance its governing documents, § 404(a)(1)(D). The Fourth Circuit has held that the appropriate standard of review when trustees' actions are challenged under § 404 is whether they are arbitrary and capricious. This standard of review is narrow, and the court is not to substitute its judgment for that of the trustees. *LeFebre v. Westinghouse Electric Corp.,* 747 F.2d 197, 204–05 (4th Cir. 1984).

In this case, the focus of the Court's review must be on the basis for the 1978 amendment and the evidence that the trustees acted arbitrarily or capriciously in adopting it. The trustees have argued that the amendment was required to reduce the Plan's unfunded liability, and they have submitted an actuary's affidavit to substantiate that argument. The affidavit indicates that the unfunded liability of the Trust in 1978 was more than $75 million. The affidavit further declares that the amendment was adopted effective January 1, 1978, in order to meet ERISA's minimum funding requirements. The plaintiffs, in response, have simply criticized the sufficiency of the affidavit and generally alleged that the adoption of the amendment was arbitrary and capricious.

Congress obviously recognized the problems created by unfunded liability based on past service credits when it amended ERISA to include § 203(a)(3)(E). That provision expressly permits exactly the sort of cancellation provision that the defendant Trust and Trustees adopted in 1978. Courts have also acknowledged that plans may need to cancel credits in order to reduce unfunded liability. As the *Stewart* court held:

> We note ... that avoiding the dumping of unfunded liability is a permissible goal of multiemployer pension funds. When a fund is obligated to pay out more money than has been paid in, and it is unable to recoup the difference, "[t]hese excess benefits would have to come largely from the stepped-up contributions of current participants." [citation omitted]. Thus, to the extent that cancellation is necessary to avoid the dumping of unfunded liability, it is presumptively reasonable.

730 F.2d at 1566; *see also Central Tool Co. v. International Ass'n of Machinists Pension Fund,* 523 F.Supp. 812, 817–818 (D.D.C.1981), *rev'd in part on other grounds* 811 F.2d 651 (D.C.Cir.1987); *cf. Harm v. Bay Area Trades Pension Plan Trust Fund,* 701 F.2d 1301, 1305 (9th Cir. 1983) (upholding cancellation of early retirement benefits to reduced unfunded liability).

■ Under the recent Supreme Court decision in *Anderson v. Liberty Lobby,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), summary judgment is appropriate where there is no genuine issue for trial and "where the evidence is so one-sided that one party must prevail as a matter of law." *Id.,* 106 S.Ct. at 2512. Here, there is evidence that the trustees adopted the amendment in order to reduce the Trust's unfunded liability, and caselaw acknowledges the importance of that objective. There is no countervailing evidence that the trustees acted arbitrarily and capriciously; instead, there are mere allegations and argument. Therefore, there is no genuine issue of fact as to whether the trustees acted arbitrarily and capriciously in adopting and interpreting the 1978 amendment.

### V. *Conclusion*

After interpreting the appropriate ERISA provisions and applying them to the undisputed facts of this case, this Court has determined that the 1978 plan amendment was permissible under ERISA §§ 203 and 302. The procedure used by the defendants to adopt the amendment and noti-

fy the Secretary of Labor did not comply with § 204(g). However, this procedural violation does not provide a reasonable basis for a finding that the trustees acted arbitrarily and capriciously, which this Court has concluded is the standard for its review of the trustees' action. Applying the same standard of review under § 404, the Court found that the trustees' adoption and interpretation of the 1978 amendment was not arbitrary and capricious.

Accordingly, because these rulings resolve the issues raised in both Count I and Count II, defendants' motion for summary judgment will be granted.