Raymond W. COLLINS; Eugene Maier; Ted Pieden; John T. Taylor, and all others similarly situated, Plaintiffs–Appellants,

and

Sonat Marine, Inc.; Sonat Marine (Maryland), Inc., and all others similarly situated, Plaintiffs,

v.

SEAFARERS PENSION TRUST; Trustees I–VII, Defendants–Appellees,

and

Seafarers International Union; Frank Drozak, Defendants.

No. 87–3593.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1988.

Decided May 17, 1988.

Robert J. Lichtenstein (Scott D. Patterson, Donna F. Winquist, Saul, Ewing, Remick & Saul, Philadelphia, Pa., Geoffrey S. Tobias, Kevin A. Dunne, Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for plaintiffs-appellants.

Harriet Ellen Cooperman (Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., Leslie Tarantola, on brief), for defendants-appellees.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Plaintiffs Raymond W. Collins, John Taylor, Eugene Maier and Ted Pieden sued Seafarers Pension Trust (the Trust) and its Trustees alleging that the enactment of a 1978 amendment of the Trust which provided for the cancellation of past service credits of employees whose employer ceased being a signatory of the Trust, and the application of the amendment to reduce their retirement benefits violated §§ 203 and 302(c)(8) of the Employees Retirement Income Security Act (ERISA or the Act), 29 U.S.C. §§ 1053, 1082(c)(8). Plaintiffs also asserted that in adopting the 1978 amendment and applying it to them, the Trustees breached their fiduciary duty under ERISA.

On cross motions for summary judgment, the district court gave judgment for defendants. It ruled that the 1978 amendment was permissible under §§ 203 and

302(c)(8); and although the procedure employed by the Trustees to adopt the amendment and to notify the Secretary of Labor[1] did not comply with § 204(g), 29 U.S.C. § 1054(g), this procedural violation did not affect the validity of the amendment or its application to plaintiffs. Furthermore, the district court concluded that the actions of the Trustees in adopting and applying the amendment to plaintiffs were not arbitrary or capricious. *Collins v. Seafarers Pension Trust,* 660 F.Supp. 386 (D.Md.1987). *See also Collins v. Seafarers Pension Trust,* 641 F.Supp. 293 (D.Md.1986) (ruling on motion to dismiss).

Plaintiffs appeal and we reverse. Although we conclude, in agreement with the district court, that the amendment could validly be made, we also agree that there was procedural noncompliance with § 204(g), but, in our view, this noncompliance invalidates the purported amendment.

### I.

The facts of the case are largely undisputed and they are set forth in some detail in the reported opinion of the district court. It is therefore necessary to recite only the most salient ones.

The Trust is a multi-employer pension plan established to provide pension benefits for members of the Seafarers International Union who work for employers that are signatories to the Trust. Sonat Marine, Inc. became a signatory in 1961, but ceased contributing to the Trust on behalf of its "licensed" employees in 1984. Plaintiffs Collins and Taylor were licensed employees of Sonat until they retired in 1985.

Dixie Carriers, Inc. became a signatory in 1962 and employed plaintiffs Maier and Pieden until they retired in 1984. In 1982, prior to their retirement, Dixie ceased contributing to the Trust.

Before 1978 the terms of the Trust provided that employees of employers that were signatories of the Trust would receive "past service credit" for the entire period

that the employee was employed by the signatory employer prior to the date of the employer's initial contribution to the Trust. Of course employees receive service credit for the time that they are employed by an employer that is a signatory and contributes to the Trust. This service credit is known as "contributory time." The amount of pension that an employee would receive upon retirement would be based upon the total of his past service credit and his contributory time.

As of January 1, 1978, the Trust was amended to provide that if an employer voluntarily ceases to be a signatory to the Trust, an employee of that employer would not be given past service credit for the periods of employment prior to the date that the employer became a signatory to the Trust and started making contributions on behalf of the employee. The primary purpose of the amendment was actuarial. When ERISA was enacted in 1974, it required pension funds to pay off or to amortize past service costs within a specified period so as to meet the minimum funding standards of the Act. *See* 29 U.S.C. §§ 1082 and 1086(e). The funding of past service credit in the Trust of necessity would be derived from future contributions of the employers whose employees' service credits were granted without contributions. In 1978 the Trust's unfunded past service liability was approximately $75 million and the Trust's actuaries had recommended adoption of the amendment so as to reduce the amount of this unfunded liability.

As applied to the four plaintiffs, the application of the 1978 amendment resulted in a substantial diminution of their respective pensions.

Although the amendment was made effective as of January 1, 1978, notice of it, as required by § 302(c)(8) of the Act, 29 U.S.C. § 1082(c)(8), was not given to the Secretary of Labor until October 25, 1978 when the Trust filed Form EB5-1, as required by the regulations. Significantly, the form stated that the amendment did

---

**1.** By virtue of Reorganization Plan No. 4 of 1978, 43 F.R. 47713, 92 Stat. 3790, the Secretary of the Treasury now performs the functions of

the Secretary of Labor under the Act with which we are concerned in this case.

*not* "result in a reduction of accrued pension benefits to participants." The Secretary did not issue any notification that he disapproved adoption of the amendment.

## II.

The parties raise a number of issues. Plaintiffs assert that the district court correctly decided that the amendment decreased accrued benefits so that it was necessary for the Trust to comply with the notice requirement of § 204(g) of the Act, 29 U.S.C. § 1054(g) and that it correctly decided that there had been noncompliance with § 204(g). Error, it is contended, occurred when the district court ruled further that the violation of § 204(g) was "procedural" and not "substantive" so that the infraction did not affect the validity of the amendment or its application to plaintiffs.

Plaintiff's next major contention is that the trustees breached their fiduciary duty in adopting and applying the 1978 amendment to plaintiffs, essentially since they proceeded in violation of § 204(g) but also because they offered no proof of the actuarial or business necessity for the amendment. Finally plaintiffs Collins and Taylor who were employees of Sonat contend that the 1978 amendment is inapplicable to them since Sonat remained a "signatory" to the Trust, it having discontinued contributions only with respect to "licensed" employees but not with respect to "unlicensed" employees.

Defendants argue to the contrary that the adoption of the 1978 amendment was permitted by and in conformity with the provisions of the Act and that the Trustees did not breach their fiduciary duties in the actions they undertook. Defendants' response to the argument of the employees of Sonat that the amendment was inapplicable to them because Sonat remained a "signatory" to the Trust even though it discontinued contributing on behalf of employees in the class to which Collins and Taylor belonged is that such a construction of the amendment is unreasonable given the amendment's goal of minimizing the unfunded liability of those for whom contributions are no longer being made.

## III.

■ We agree with the district court, for the reasons set forth in its two opinions, that the right to receive a pension for past service is an accrued benefit even before actual retirement, but that a reduction in such a benefit may be accomplished by compliance with § 204(g) of the Act, 29 U.S.C. § 1054(g), which, in turn, requires compliance with § 302 of the Act, 29 U.S.C. § 1082(c)(8). *See* 660 F.Supp. at 388–92; 641 F.Supp. 295–97. Where we differ with the district court is the effect of noncompliance with these statutory provisions.

We begin the explanation of our difference with reference to the statutes themselves. Section 204(g) of the Act, 29 U.S.C. § 1054(g), states simply that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title." Section 302 of the Act which is codified as 29 U.S.C. § 1082 relates to minimum funding standards of a pension benefit plan. It requires the establishment of a funding standard account, prescribes the charges to be made to the account and how the value of the assets and liabilities of the plan are to be determined.

With respect to the latter, § 302(c)(8) of the Act, 29 U.S.C. § 1082(c)(8), states:

> For the purposes of this part, any amendment applying to a plan year which—
>
> (A) is adopted after the close of such plan year but not later than 2½ months after the close of the plan year (or, in the case of a multiemployer plan, no later than 2 years after the close of such plan year),
>
> (B) does not reduce the accrued benefit of any participant determined as of the beginning of the first plan year to which the amendment applies, and
>
> (C) does not reduce the accrued benefit of any participant determined as of the time of adoption except to the extent required by the circumstances,
>
> shall, at the election of the plan administrator, be deemed to have been made on

the first day of such plan year. *No amendment described in the paragraph which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary notifying him of such amendment and the Secretary has approved such amendment or, within 90 days after the date on which such notice was filed, failed to disapprove such amendment. No amendment described in this subsection shall be approved by the Secretary unless he determines that such amendment is necessary because of a substantial business hardship (as determined under section 1083(b) of this title) and that waiver under section 1083(a) of this title is unavailable or inadequate.*[2] (emphasis added).

Obviously there was noncompliance, as the district court found, with these statutory provisions. There was no timely notice to the Secretary that the plan had been amended with respect to a reduction of accrued benefits to participants. Indeed the Secretary was given notice to the contrary. As a result, the Secretary made no determination to approve the amendment either by affirmative approval or by inaction. We specifically reject the Trustees' argument that since, at the time, there were no regulations setting forth notice requirements that the report filed was legally sufficient to raise an independent duty on the part of the Secretary to determine that the amendment was justified in order to alleviate or avoid substantial business hardship. As we have indicated, the effect of the filing, whether intentional or not, was to assure the Secretary that the plan had not been amended with respect to any accrued benefits.

■ In our view, the failure to give adequate notice of the amendment and thus to trigger the requisite determination by the Secretary vitiates the effectiveness of the amendment. First, the language of the pertinent statutes is in the imperative. Section 204(g) says that accrued benefits "may not be decreased by an amendment of the plan" other than one described in § 302. Section 302 is specific that an amendment "shall not take effect" until timely notice of the amendment is given to the Secretary and the Secretary makes the determination that the amendment is necessary "because of substantial business hardship."

Because the statutory language is so clear, there is little need to resort to legislative history. It is significant, however, to consider the intent of Congress in enacting § 302 as expressed in House Conference Report No. 93–1280 discussing the language which constitutes the present enactment. There, it was said:

The conference substitute generally allows limited retroactive plan amendments, but only with the approval of the Secretary of Labor.

Under the conference substitute, plan amendments that reduce plan benefits

---

**2.** 29 U.S.C. § 1083(a) and (b) to which reference is made provide as follows:

**(a) Waiver of requirements in event of business hardship**

If an employer, or in the case of a multiemployer plan, 10 percent or more of the number of employers contributing to or under the plan are unable to satisfy the minimum funding standard for a plan year without substantial business hardship and if application of the standard would be adverse to the interests of plan participants in the aggregate, the Secretary of the Treasury may waive the requirements of section 1082(a) of this title for such year with respect to all or any portion of the minimum funding standard other than the portion thereof determined under section 1082(b)(2)(C) of this title. The Secretary of the Treasury shall not waive the minimum funding standard with respect to a plan for more than 5 of any 15 consecutive plan years.

**(b) Matters considered in determining business hardship**

For purposes of this part, the factors taken into account in determining substantial business hardship shall include (but shall not be limited to) whether—

(1) the employer is operating at an economic loss,

(2) there is substantial unemployment or underemployment in the trade or business and in the industry concerned,

(3) the sales and profits of the industry concerned are depressed or declining, and

(4) it is reasonable to expect that the plan will be continued only if the waiver is granted.

may be made after the close of the plan year, and yet apply to that year if they are made within 2½ months after the end of the plan year. However, since a single plan year is not a workable standard for multiemployer plans, with respect to multiemployer plans, an amendment may be made under the conference substitute within 2 years of the close of the plan year.

To protect participants, amendments made under this provision are not to decrease vested benefits of any participant determined as of the time the amendment is adopted. In addition, such a retroactive amendment cannot reduce the accrued benefit (whether or not vested) of any participant determined as of the beginning of the first plan year to which the amendment applies. *Moreover, such an amendment is not to retroactively reduce the accrued benefit of any participant, unless there would otherwise be an accumulated funding deficiency for all or part of the plan year in question, the funding deficiency could not be avoided through the implementation of any other reasonably available alternative (including amortization of experience losses or a waiver of the funding requirement), and the funding deficiency was not primarily attributable to the failure by employers to discharge contractual obligations to make contributions under the plan (e.g., failing to contribute a required amount per hour of work of plan participants ).*

Under the conference substitute, the plan administrator is to notify the Secretary of Labor of any amendment which retroactively decreases plan liabilities, before the amendment goes into effect. The amendment can then go into effect only if the Secretary has approved it, or if the Secretary does not disapprove it within 90 days after notice is filed. It is expected that within the 90–day period the Secretary may notify the plan of a tentative disapproval, if he needs more information or more time before making a final determination. The Secretary of Labor is not to approve any retroactive amendment unless he determines that it meets the requirements discussed above and determines that it is necessary because of substantial business hardship. (emphasis added).

H.R. No. 93–1280, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad. News 4639, 5038, 5067–68.

Within the contemplation of Congress, notice to the Secretary and the Secretary's determination were not mere procedural niceties but were a genuine effort to protect employees from abuse by the fiduciaries of their pensions. *See Hoover v. Cumberland, Maryland Area Teamsters Pension Fund,* 756 F.2d 977, 984 (3 Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed. 2d 111 (1985).

Because the Secretary has a significant role in protecting employees' accrued benefits from adverse retroactive treatment, we reject the argument of the Trustees that, putting aside questions of adequacy and lateness of their notice of amendment, the amendment is justified because by affidavit it is shown that the actuary has determined the Trust's unfunded past service liability was approximately $75 million and adoption of the amendment would reduce this unfunded liability. Under the statute and as intended by Congress, these facts are only the beginning point in the determination that the amendment is necessary because of substantial business hardship. There must be a showing even then of the factors set forth in § 303, 29 U.S.C. § 1083, and this was not done in this case. In addition, we cannot be unaware that Sonat and Dixie became signatories of the Trust in 1961 and 1962, respectively, and did not withdraw until 1984 and 1982 respectively. Undoubtedly they made some contributions to fund past service credit before their withdrawal. It may be entirely possible that, if the Trustees properly proposed an amendment of the type adopted in 1978, the Secretary might find that substantial business hardship did not require complete abrogation of all prior service credit but only prior service credit to the extent that it was not already funded. This too is an additional reason why we think that the mandatory language of §§ 204(g) and 302 should be enforced.

Because we conclude that the 1978 amendment is not effective, we reverse the summary judgment for defendants and remand the case to the district court for further proceedings consistent with this opinion. In view of this conclusion, we do not find it necessary to decide plaintiff's other contentions.

REVERSED AND REMANDED.