Eugene R. SUTTON, Raymond Ludewig, Paul D. Alexander, Anthony J. Angelo, John P. Barlas, Thomas V. Barnhouse, William Bell, Walter Birrell, Pete Brier and Camden Bumgarner, et al., Appellants,

v.

WEIRTON STEEL DIVISION OF NATIONAL STEEL CORPORATION, Independent Steel Workers Union and Pension Agreement between the National Steel Corporation and the Independent Steelworkers Union, Appellees.

Gerald W. BRUNNER, Clarence Rifkee, Norman Clark, James Hoge and all others similarly situated, Appellants,

v.

NATIONAL STEEL CORPORATION, Independent Steelworkers Union, Weirton Joint Study Committee, Inc. and Pension Agreement between the National Steel Corporation and the Independent Steelworkers Union, Appellees.

Edward DHAYER, Edward Bittner, Richard Blancato and James H. Browning, et al., Appellants,

v.

WEIRTON STEEL DIVISION OF NATIONAL STEEL CORPORATION and Independent Steelworking Union, Appellees.

Nos. 83–1567, 83–2003, 83–1569, 83–1895 and 83–2004.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1983.

Decided Dec. 30, 1983.

Certiorari Denied May 21, 1984.

See 104 S.Ct. 2387.

Barry Laine, Youngstown, Ohio (Anthony P. Sgambati, II, David Roloff, Green, Schiavoni, Murphy, Haines & Sgambati Co. L.P.A., Youngstown, Ohio, on brief) and John Randolph Spon, Jr., Steubenville, Ohio (Keith A. Fournier, Spon & Fournier, Steubenville, Ohio, on brief), for appellants.

Carl H. Hellerstedt, Jr., Pittsburgh, Pa. (Joseph Mack, III, Brian J. Dougherty, Thorp, Reed & Armstrong, Pittsburgh, Pa., on brief), David L. Robertson, Weirton, W.Va. (William Kiefer, Peter Rich, Bogarad & Robertson, Weirton, W.Va., on brief), Anthony F. Phillips, New York City (Gerald Kerner, Brian E. O'Connor, Laurence H. Lenz, Jr., Willkie Farr & Gallagher, New York City, on brief), for appellees.

Before PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

This appeal of consolidated cases arises out of an agreement by National Steel Corp. to sell its Weirton Steel Division to a

new company, Weirton Steel Corp., which is owned by the Division's employees. The district court granted partial summary judgments in favor of National, its Retirement Program, and the Independent Steelworkers Union.* Finding no just reason for delay, it entered final judgment pursuant to Federal Rule of Civil Procedure 54(b) on the issues that it had considered. The appellants, a minority of the employees at the Division, assert that the district court erred by holding that National did not violate the Employee Retirement Income Security Act (ERISA), that the union did not breach its duty of fair representation, that class certification was inappropriate, and that the appellants were not entitled to injunctive relief.

We find no cause for reversal in these assignments of error and affirm the judgments of the district court.

I

In March 1982, National announced that it would reduce capital expenditures, production capacity, and employment at the Division. It also said it would consider a sale of the Division. The Weirton Joint Study Committee, Inc., was then established to study the possibility of forming a corporation owned by employees to purchase the Division. The committee included five representatives of management, twenty-one representatives of the Independent Steelworkers Union, and three representatives of the Independent Guard Union. The committee retained legal counsel and commissioned consultants to make a feasibility study. It also engaged other firms to assist with aspects of the proposed transaction requiring particular expertise.

The agreement of sale provided for modification of pension and severance benefits contained in the collective bargaining agreements for union employees and in National's retirement program and personnel policies for salaried nonunion employees. These benefits and the amendments are essentially the same for all employees. Un-

ion members approved the changes in the bargaining agreements and other terms of sale. National unilaterally changed its program and policies for nonunion members.

The benefits and the amendments affecting them are fully described in the opinions of the district court. For the purposes of this appeal they can be recapitulated as follows. All workers, whether they choose to work for the new company or not, will retain the normal retirement benefits earned through service with National before the sale. National will segregate all assets attributable to the Division and establish a separate trust available to pay normal retirement benefits to past and present Division employees. The new company will be responsible for benefits accrued after the change in ownership. When an employee who has worked at both companies retires, his years of service will be aggregated, and he will receive benefits from National and the new company in proportion to his service for each.

In addition to normal retirement benefits, National provided early retirement benefits and severance pay in the event of shutdown or layoff for employees with the requisite combination of age and years of employment. For convenience, we will refer to these benefits and severance pay collectively as contingent benefits. These benefits were not funded. They were payable, if at all, from National's corporate treasury. The agreement stipulates that the sale of the Division will not trigger payment of the contingent benefits. National, however, will remain liable for the shutdown benefits if within five years of the sale Weirton Steel closes. Contingent benefits similar to those formerly available at National will be provided by the new company.

The appellants protest the agreement to eliminate National's obligation for the contingent benefits upon the sale of the Division. It is their position that, regardless of their immediate employment by the new company, their status as employees of Na-

---

* *Dhayer v. Weirton Steel Division of National Steel Corp.*, 571 F.Supp. 316 (N.D.W.Va.1983); *Sutton v. Weirton Steel Division of National Steel Corp.*, 567 F.Supp. 1184 (N.D.W.Va.1983).

tional will be terminated by the sale. In the absence of the agreement, they insist, the sale would entitle them to the contingent benefits. They point out that the shutdown benefits alone, without the severance pay, would aggregate approximately $300,000,000 and that National has avoided this liability.

## II

Summary disposition of the issues presented in this appeal was appropriate. All of the material facts, save one, were established by uncontradicted evidence. To fill the hiatus occasioned by the single dispute over a genuine issue of fact, the district court accepted as proved the allegations that National's sole motivation for the sale was avoiding future pension obligations. *See Dhayer,* 571 F.Supp. at 326; *Sutton,* 567 F.Supp. at 1198.

 Though permitted by 29 U.S.C. § 1108(c)(3) to serve as an administrator of its pension plan, National's fiduciary obligations were not diminished by its dual role. *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.1982). National was required to discharge its fiduciary duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA's requirements "insulate the trust from the employer's interest," and, consequently, National was not permitted to assume a position where it had "dual loyalties" in the administration of the plan. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 333–34, 101 S.Ct. 2789, 2796–97, 69 L.Ed.2d 672 (1981).

By retaining liability for all normal retirement benefits and establishing a separate trust for their payment, National did not violate any provision of ERISA or any fiduciary obligation with respect to accrued benefits, which under the plan were payable at age 65. The critical question, therefore, is whether ERISA imposes any fiduciary obligations to maintain the contingent benefits about which the appellants complain. If it does, summary judgment was inappropriate, because in avoiding the payments through sale of the Division, National's self-motivation, which the district court as-

sumed for the purpose of this proceeding, cannot be reconciled with its fiduciary duties. On the other hand, if ERISA does not impose an obligation on National to maintain the contingent benefits, National in its capacity as an employer could undertake to eliminate them.

 Under ERISA's vesting rules, only accrued benefits must be nonforfeitable. 29 U.S.C. § 1053(a). With respect to the issues raised by these appeals, ERISA defines an accrued benefit as an "annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23). The accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits or severance payments. The Act was not designed to prohibit modification of these ancillary benefits. *See* H.R.Conf.R. No. 1280, 93d Cong., 2d Sess. 273, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5054; H.R.Rep. No. 807, 93d Cong., 2d Sess. 60–61, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4670, 4726. Rather, Congress believed that the "vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." H.R.Rep. No. 807, 93d Cong., 2d Sess. 60, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4890, 4935. An employer may change such benefits without violating ERISA. *See Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1306 (9th Cir.1982). *But cf. Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. 1188, 1196–97 (E.D.Mo. 1980), *modified,* 653 F.2d 1208 (8th Cir. 1981). Any right to payment of benefits before normal retirement age must be found in pertinent employment agreements. *Fine v. Semet,* 699 F.2d 1091, 1093 (11th Cir.1983). Consequently, National, in its capacity as an employer, did not violate ERISA.

 Also, National, in its capacity as a fiduciary, did not violate ERISA. Congress authorized an employer to administer its pension plan, and in the discharge of its duties with respect to the plan, the employ-

er must satisfy the exacting fiduciary standards imposed by ERISA. Congress, however, has not prohibited an employer who is also a fiduciary from exercising the right accorded other employers to renegotiate or amend, as the case may be, unfunded contingent benefits payable before normal retirement age. The changes, accomplished in this manner, are not to be reviewed by fiduciary standards.

These conclusions are sustained by *United Mine Workers Health and Retirement Funds v. Robinson,* 455 U.S. 562, 573–76, 102 S.Ct. 1226, 1232–34, 71 L.Ed.2d 419 (1982). *Robinson* dealt with the fiduciary obligations imposed by § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, on trustees of a fund for employee benefits. Nevertheless, it is pertinent because the high fiduciary standards exacted by both the Labor Act and ERISA are essentially the same. In *Robinson,* benefits created by the collective bargaining agreement were changed by renegotiation. The Court held that the changes were not to be reviewed under fiduciary standards, cautioning: "[W]hen neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." 455 U.S. at 576, 102 S.Ct. at 1234.

### III

In addition to the general fiduciary standards imposed by § 1104, Congress also prohibited fiduciaries from engaging in certain specified conduct, including transferring assets of a plan to a party in interest, dealing with assets for their own account, and acting in any capacity in a transaction involving the plan on behalf of a party whose interests are adverse to the plan. 29 U.S.C. § 1106. *See NLRB v. Amax Coal Co.,* 453 U.S. 322, 332–34, 101 S.Ct. 2789, 2795–97, 69 L.Ed.2d 672 (1981). The appellants assert that the district court erred by holding that National did not violate these provisions of § 1106. They base their argument on two premises: first, that National's liability for the contingent benefits was an asset of the plan; and, second, that National illegally caused the plan to relinquish this asset by agreeing that the sale would not trigger payment of the contingent benefits. The appellants support their argument by the affidavit of an actuary who expressed the opinion that National's liability was an asset of its pension fund.

It may well be that a prudent actuary would consider National's contingent liability in evaluating its total potential liability for benefits in view of the domestic steel market. Certainly responsible management would want to know the magnitude of its exposure if the plant were shut down. But the actuary's opinion is not proof that National's contingent liability is an asset of the plan within the meaning of ERISA. No provision of the Act requires this contingent liability to be funded as an asset of the plan. The parties recognize that if National should become liable for the contingent benefits, the pension fund, which is dedicated to the payment of normal retirement benefits, cannot be diverted for this purpose. *See Cutaiar v. Marshall,* 590 F.2d 523, 528–30 (3d Cir.1979). The only source of payment would be the company's treasury. National in its capacity as the manager of its business can use its corporate treasury for general corporate business. Conversely, in its capacity as a fiduciary, National is not required by ERISA to account for expenditures from its corporate treasury that are disbursed for general corporate purposes.

National has not caused the benefit plan to engage in a transaction with respect to the contingent benefits. The benefit plan covers the employees of several divisions. The segregation of assets available for normal retirement of Division employees and the establishment of a separate trust for this purpose is in essence a bookkeeping transaction. No funds held by the pension plan will be depleted or recouped by the company because of the agreement not to trigger the contingent benefits.

In short, ERISA does not impress a trust upon National's corporate treasury for the payment of the contingent benefits.

The appellants have cited no case in support of their position. It is the unfunded nature of National's contingent liability that distinguishes this case from the cases, on which the appellants rely, where courts have found that fiduciaries have violated § 1106. *See, e.g., Cutaiar v. Marshall,* 590 F.2d 523 (3d Cir.1979); *McDougall v. Donovan,* 552 F.Supp. 1206, 1212–16 (N.D.Ill. 1982). Accordingly, we conclude that the district court correctly ruled that National did not violate § 1106.

## IV

The district court held that undisputed evidence established that the Independent Steelworkers Union did not breach its duty of fair representation by agreeing to the terms of sale. The appellants assign error to this aspect of the court's judgment on both substantive and procedural grounds.

 The union had a statutory duty to represent fairly all of the Division employees in its bargaining with National. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1953). To establish a breach of the duty of fair representation, the appellants must show that the union's conduct was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

Confronted with the prospect of the loss of several thousand jobs, the union through the Joint Committee participated in negotiating the Division's sale. The union relied on the advice of expert consultants. It agreed to the terms of sale only after its members had ratified the changes in the bargaining agreement that are the subject of the appellants' complaint. The agreement treats all union members equally, although it has an immediate effect on the appellants, who have sufficient service to qualify for the contingent benefits.

 It is inevitable in the give-and-take of collective bargaining that some employees will fare worse than others. But a union may compromise to achieve long-term advantages, even though individual employees may be affected differently by the resulting agreement. *See Humphrey v. Moore,* 375 U.S. 335, 349–50, 84 S.Ct. 363, 371–72, 11 L.Ed.2d 370 (1964); *Ford Motor,* 345 U.S. at 338, 73 S.Ct. at 686; *Ekas v. Carling Nat'l Breweries, Inc.,* 602 F.2d 664, 667 (4th Cir.1979). In concert with the district court, we hold that the evidence conclusively establishes that the union's conduct was not arbitrary, discriminatory, or in bad faith. Consequently, the union did not breach its duty of fair representation.

 The appellants also contend that the court committed procedural error by granting summary judgment to the union without a pending motion under rule 56 and without affording them the notice and protection afforded by rules 12(b)(6) and 56. They also protest the court's denial of further discovery.

Ordinarily an assignment of error similar to the appellants' would dictate vacating the district court's judgment. But considering the procedures followed in this case and the voluminous evidence the parties presented, we find no error that survives application of the harmless error provisions of rule 61. The trial court consolidated these cases for hearing, briefing, and argument. It denied the union's motion for judgment on the pleadings without reaching the merits of the motion. Instead, the court noted the relationship between the alleged illegal conduct of both National and the union, and it indicated that these issues must be considered together. At the direction of the court, all parties filed statements of issues, which included the question of the union's representation. This question was again raised in National's motion for summary judgment. Consequently, we are satisfied that the appellants had ample notice and full opportunity to participate without prejudice in the procedure that the court subsequently followed in granting summary judgment.

## V

In view of our conclusions about the principal issues raised by the appellants, the remaining assignments of error require no

discussion. The district court did not err by dismissing pendent state claims or by denying class certification and injunctive relief.

The judgments of the district court are affirmed.