Joseph W. HLINKA, Appellant,

v.

BETHLEHEM STEEL CORPORATION and General Pension Board of the Bethlehem Steel Corporation and Subsidiary Companies, and M.P. Dopera, Plan Administrator, Appellees.

No. 88-1347.

United States Court of Appeals, Third Circuit.

Argued Oct. 31, 1988.

Decided Dec. 8, 1988.

Rehearing and Rehearing In Banc Denied Jan. 9, 1989.

Dona S. Kahn (argued), Alison Pease, Harris and Kahn, Philadelphia, Pa., for appellees.

Harry A. Dower (argued), Dower & Co., P.C., Allentown, Pa., for appellant.

Before GIBBONS, Chief Judge, and BECKER and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge.

### I.

Joseph W. Hlinka appeals from a summary judgment in favor of the defendants, Bethlehem Steel Corporation (BSC), the Bethlehem Pension Board, and the Bethlehem Plan Administrator in Hlinka's suit under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1982). When reviewing grants of summary judgment, our scope of review is plenary. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). We will affirm.

### II.

Hlinka was hired by BSC on April 2, 1962. He is presently a salaried senior research fellow, and is a participant in the BSC pension plan.[1] In January 1986, after twenty-four years of continuous service with the company, fifty-six year old Hlinka applied for a 70/80 retirement pension.[2]

---

1. The plan is administered by a General Pension Board (pension board) and by the secretary of the board who is the plan administrator. The secretary is vested with the power to grant benefits provided by the pension plan as well as the power to decide questions which arise incident to its administration. The secretary's decisions are subject to review by the board.

2. A plan participant may qualify for 70/80 retirement by satisfying a combination of continuous service and age equaling 70 or 80 years in conjunction with any one of four other criteria stipulated in the plan. Section 2.6(d) is the pertinent part of the plan at issue in this case. Section 2.6 provides:

    Any participant who has not attained the age of 62 years and who shall have had at least 15 years of continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

    (a) whose continuous service is broken by reason of a permanent shutdown of a plant, department or subdivision thereof or by reason of a layoff or physical disability, or

The plan administrator determined that Hlinka was not entitled to a 70/80 retirement pension because he did "not satisfy the eligibility requirements of subparagraphs (a), (b), or (c) of paragraph 2.6 of the plan [and] with respect to paragraph 2.6(d), [the] employing company Bethlehem Steel Corporation, has not indicated that it considers [his] retirement to be in its interest...." Letter dated July 15, 1986. Hlinka was provided with a description of the review procedure and was invited to submit additional information he considered relevant to his case along with a request for review. On September 15, 1986, in a meeting that Hlinka was not permitted to attend, the pension board reviewed Hlinka's claim and upheld the plan administrator's decision that Hlinka was ineligible for a 70/80 retirement pension.

Hlinka then brought this action. He alleges violations of sections 403, 404, and 503 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1103, 1104, and 1133 (1982).

### III.

Hlinka contends that there are genuine issues of material fact which precluded the issuance of summary judgment in favor of the defendants. Summary judgment is merited when the moving party is entitled to a judgment as a matter of law because

there is no genuine issue of material fact. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), defined a material fact as one which "might affect the outcome of the suit under governing law...." A determination of materiality is contingent upon the substantive law as it determines the factual disputes crucial to the establishment of the legal elements of the claim at issue. *Id.*

■ The first "factual dispute" identified by Hlinka is the district court's description of the 70/80 pension provision as an "early" retirement plan. The statutory language of ERISA and BSC's pension plan stipulate that the age of "normal retirement" is sixty-five.[3] Thus, allowance in the 70/80 provision for retirement at an earlier age legally creates an "early" retirement benefit. The fact that the plan does not expressly use the word "early" is not consequential.

■ Secondly, Hlinka challenges the district court's finding that BSC had only twice previously used the 70/80 retirement provision. He refers to his affidavit where in paragraph six he states: "I believe and therefore aver that hundreds of persons like me, eligible for a 70/80 Retirement, were granted such benefits and that the

(b) whose continuous service is not broken and who is absent from work by reason of:
   (1) a layoff resulting from his election to be placed on layoff status as a result of a permanent shutdown of a plant, department or subdivision thereof, or
   (2) a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by his Employing Company, or
(c) whose continuous service is not broken, but who while on layoff resulting from his election to be placed on layoff status as a result of a permanent shutdown of a plant, department, or subdivision thereof, accepts a position with an Employing Company and, prior to the expiration of 90 consecutive calendar days from the first day in such position, elects to retire, or
(d) who considers that it would be in his Employing Company's interest to retire, and his Employing Company considers that such retirement would likewise be in its interest

and approves an application for retirement under mutually satisfactory conditions, shall be eligible to retire ..., and shall upon his retirement ... be eligible for a pension....

**3.** "Normal retirement age" is 65 for a participant whose participation began before age 55 unless the plan specifies an earlier retirement date. 29 U.S.C. § 1002(24) (1982). Additionally, paragraph 2.1 of the BSC Pension Plan provides that:

> "[a]ny participant who shall have at least ten years of continuous service and shall have attained the age of 65 years shall be eligible to retire ... and shall upon his retirement be eligible for a pension."

The BSC plan does not expressly stipulate 65 as a normal retirement age, but absent an express provision as to age in a pension plan the normal retirement age is 65 pursuant to ERISA. *Geib v. New York State Teamsters Conference Pension and Retirement Fund*, 758 F.2d 973, 977 (3d Cir.1985).

situation of such persons was no different than mine." Additionally, paragraphs seventeen and eighteen contain statements that Hlinka "believe[s] and therefore aver[s]" that two high level officials are currently receiving pensions to which they are ineligible. This court in *Maldonado v. Ramirez*, 757 F.2d 48, 50 (3d Cir.1985), indicated that Federal Rule of Civil Procedure 56(e) requires that an affidavit in opposition to a motion for summary judgment must be based "on personal knowledge," must establish "such facts which would be admissible" and must "show affirmatively that the affiant is competent to testify in all matters stated therein." *See also* 6 J. Moore, W. Taggert & J. Wicker Moore's Federal Practice § 56.22[1] (2d ed. 1985). The quoted assertions by Hlinka fail any of the criteria set forth in Rule 56(e).

Satisfaction of the first criteria fails because Hlinka did not establish that his affidavit was based on personal knowledge. He merely used the word "believe." Hlinka asserts that the word "believe" was needlessly and unfairly underscored because the defendants frustrated and impeded his discovery efforts. He maintains that under the circumstances all he could do was to aver what he believed to be correct.

In response to his interrogatories, Hlinka was provided with facts concerning 70/80 retirements of all non-represented salaried employees from 1983 through 1986. He requested information including the retirement circumstances of various individuals as well as the salaries of certain former and present employees. The defendants sought an order pursuant to Federal Rule of Civil Procedure 26(c) that the circumstances of retirement and salaries of these individuals be kept confidential. It was felt that disclosure of such information would be an invasion of privacy. The Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed. 2d 17 (1984), noted that:

> It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense, discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

467 U.S. at 34–35, 104 S.Ct. at 2208–09. The district court in an order denying plaintiff's motion for reconsideration of the order of confidentiality found that the defendants had satisfied Rule 26(c) by demonstrating a "particular need for protection" from harm that was "significant, [and] not a mere trifle." [4] *Cippolone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986). Furthermore, the court in the same order stated that if Hlinka deemed the requested information vital to discovery he could move to have the information classified as nonconfidential. Hlinka did not so move.

Hlinka's affidavit also fails the second and third criteria of Rule 56(e). Hlinka never established that he was competent to testify about other employees' BSC pensions. Furthermore, many of the statements within the affidavit were hearsay and would be inadmissible unless they qualified as hearsay exceptions. Because the affidavit did not meet the requirements of

---

**4.** The district court found that if the protective order was vacated:

> a) Defendant Bethlehem Steel will be forced to breach its confidentiality promise to its employees contained in its employee handbook, b) Defendant Bethlehem Steel's relationship with its workforce will be seriously disrupted in that its employees will object to supplying Bethlehem Steel with further information, c) Breach of the confidentiality policy will seriously erode its employees' confidence in the company to honor its commitments, d)

> The flow of information to defendant Bethlehem Steel from its employees will be disrupted because employees will refuse to give the company any confidential information in the future, and e) Disclosure of the specific circumstances surrounding an employee's termination may lower the morale of those who work under the terminated employee thereby lowering worker productivity.

*Hlinka v. Bethlehem Steel Corp.,* No. 87–0005 (E.D.Pa. Order filed Oct. 13, 1987).

Rule 56(e), it may not be considered in deciding defendants' motion for summary judgment. Hlinka failed to identify any material disputed facts which could defeat the motion for summary judgment on other than legal grounds. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). Thus we turn our attention to the legal merits of the case.

## IV.

■ Hlinka begins with the premise that paragraph 2.6(d) of the BSC plan is invalid as a matter of law because it violates section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1) (1982). That paragraph allows employees who meet the age and service requirements, to retire under the 70/80 pension provision so long as the company deems such retirement to be in "its interest." Hlinka contends that paragraph 2.6(d) directly conflicts with the requirement that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (1982).

The broad grant of discretion provided by paragraph 2.6(d) of BSC's plan is not prohibited by ERISA.[5] In *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984), *cert. denied*, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1985), the Sixth Circuit Court of Appeals rejected the argument that ERISA precludes all pension activity which inures to an employer's benefit. The court posited that ERISA was not intended to preclude employers from exercising their

business and economic savvy for the interests of the pension plan as well as the interests of the employer.[6] The district court, citing *Petrella v. NL Industries, Inc.*, 529 F.Supp. 1357, 1365 (D.N.J.1982), noted that Congress left employers much discretion in designing their plans, and thereby the ability to determine the benefits to be provided in the plans. The pension scheme as originally conceived by Congress and enforced by ERISA is essentially voluntary. ERISA nowhere mandates the institution of a pension program or the right to a pension. ERISA is not a direction to employers as to what benefits to grant their employees. Rather, ERISA is concerned with the *administration* of an established plan and its elements. *Viggiano v. Shenango China Division of Anchor Hocking*, 750 F.2d 276, 279 (3d Cir.1984) (emphasis added). Congress' primary concern was with "improving the fairness and effectiveness of qualified retirement plans" so that "individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire." H.R.Rep. No. 807, 93d Cong., 2d Sess. 8 *reprinted in* 1974 U.S. Code Cong. & Ad. News, 4639, 4670, 4676–77.

The 70/80 retirement provision in this case was promulgated by BSC to help BSC and its employees during periods of labor reduction caused by BSC's distressed economic conditions. Thus, retirement under the 70/80 provision provides immediate pension benefits to those who retire before the normal retirement age of sixty-five because of a plant shutdown, layoffs or disability. Since Hlinka was not eligible for benefits based solely on age and continuous years of service, he applied under para-

---

5. It must be noted that after January 1, 1989, the Internal Revenue Service is limiting the exercise of employer discretion in the operation of their plans. Treas.Reg. § 1.411(d)–4 Q–A–4.

6. Specifically, the court stated:
   The language of ERISA stating that "the assets of a plan shall never inure to the benefit of any employer" cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of bene-

fitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective.... Congress did not intend the Act to penalize employers for exercising their discretion to make rational economic decisions which are both in the best interests of the preservation of the fund and which are also not adverse to the employer's interests.
732 F.2d at 551–52.

graph 2.6(d) of the pension plan. BSC, however, did not deem that it was in the employer's interest for Hlinka to retire,[7] so his request for early retirement was denied. Such a determination does not currently violate the spirit of ERISA.

Hlinka also contends that the denial of his request for early retirement and hence the denial of at least a portion of his nonforfeitable[8] benefits is violative of ERISA. The district court found that the 70/80 retirement plan benefits were forfeitable because they were not accrued benefits. Under ERISA's minimum vesting standards, only accrued benefits must be nonforfeitable. 29 U.S.C. § 1053(a) (1982). An accrued benefit is defined in ERISA as an individual's right to a retirement benefit "determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S. C. § 1002(23) (1982). The statute defines "normal retirement age" as "the earlier of [either] the time a plan participant attains normal retirement age under the plan, or ... the time a plan participant attains age 65." 29 U.S.C. § 1002(24) (1982).

ERISA does not obligate a plan to pay employee benefits before normal retirement age. ERISA specifically refers to normal, rather than early retirement in the context of accrued benefits. This court noted ERISA's legislative history[9] when it asserted that "the Act was not intended to assure the sanctity of early retirement expectations." *Bencivenga v. Western Pa. Teamsters,* 763 F.2d 574, 577 (3d Cir.1985). In *Sutton v. Weirton Steel Division of National Steel Corp.,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), employees claimed that the sale of the division of the company and the resultant elimination of severance pay and early retirement benefits from the retirement program violated ERISA. The Court of Appeals for the Fourth Circuit held that contingent early retirement benefits do not constitute accrued benefits given the statute's stipulation that an accrued benefit commences at normal retirement age. 724 F.2d at 410. Relying on *Sutton,* and other pertinent cases, i.e. *Bencivenga v. Western Pa. Teamsters and Employers Pension Fund,* 763 F.2d 574 (3d Cir.1985); *Hoover v. Cumberland, Md. Area Teamsters Pension Fund,* 756 F.2d 977 (3d Cir.1985); *Fine v. Semet,* 699 F.2d 1091 (11th Cir.1983); *Hernandez v. So. Nevada Culinary and Bartenders Pension Trust,* 662 F.2d 617 (9th Cir.1981); *Petrella v. NL Industries, Inc.,* 529 F.Supp. 1357 (D.N.J.1982), the district court properly determined that early retirement benefits are not accrued benefits under ERISA.[10] Therefore, the denial of

---

7. The determination that Hlinka's retirement would not be in the interest of BSC was made by Hlinka's manager, Robert Bouman. This decision was confirmed by Bouman's supervisors. It was decided that Hlinka's continued employment was in the interest of BSC "because of his extensive and unique technological expertise related to the project to which he was assigned." Defendant's Interrogatories, Question 4(b), App. 74.

8. ERISA defines nonforfeitable as follows:
   ... when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.
   29 U.S.C. § 1002(19) (1982).

9. The term "accrued benefit" refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits.... To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.... Also, the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age....
   Generally, an individual's "accrued benefit" under a defined benefit plan is to be expressed in the form of an annual benefit commencing at normal retirement age.
   H.R.Rep. No. 807, 93d Cong., 2d Sess. 57, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4670, 4726.

10. In 1984, Congress amended ERISA by providing that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan ... a plan amendment which has the effect of—
   (A) eliminating or reducing an early retirement benefit ... with respect to benefits attributable to service before the amendment shall be

Hlinka's request for early retirement with the consequent denial of his nonforfeitable benefits is not violative of ERISA.

## V.

■ Hlinka urges that the district court's conclusion that early retirement benefits are not accrued benefits, was a backdoor method of rationalizing that the defendants did not act arbitrarily and capriciously in violation of their fiduciary duty to act solely in the interests of plan participants and their beneficiaries.[11] This issue is the crux of this case. Furthermore, varying analyses of the term fiduciary[12] have resulted in discrepant district court holdings involving almost identical fact patterns. *Hlinka v. Bethlehem Steel Corp.*, No. 87–0005 (E.D.Pa. March 31, 1988), *Shaw v. NVF Co.*, 694 F.Supp. 1111 (D.Del. 1988).

In *Trenton v. Scott Paper Co.*, 832 F.2d 806 (3d Cir.1987), Scott Paper Company had amended its retirement plan to add a provision designed to encourage early retirement of employees at various Scott plants to reduce the workforce at those sites. The plaintiffs were the class of employees who were ineligible for early retirement. They alleged that the company and the pension board were not acting for the "exclusive benefit" of the participants and their beneficiaries because the program was initiated for the enhanced efficiency of the company. This court found that the "design" of the early retirement plan was an appropriate management decision by Scott, and the pension board had no authority to change the plan or refuse to adopt it. 832 F.2d at 809. The BSC plan is analogous to the Scott plan in that BSC designed the 70/80 provision to encourage employees with the requisite combination of age and years of service to retire early if such retirement was in the best interest of the company. The *design* of this plan was unquestionably not violative of ERISA because BSC in drafting the plan was acting as an employer and not a fiduciary. The question then becomes whether BSC was acting as a fiduciary when it made the decision that Hlinka's early retirement was not in its best interests.

The Eighth Circuit Court of Appeals in *Hickman v. Tosco Corp.*, 840 F.2d 564 (8th Cir.1988), stated that "the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as an employer when not administering the plan or investing its assets." 840 F.2d at 566. At first blush, it could be argued that BSC was acting as a fiduciary because it was exercising discre-

---

treated as reducing accrued benefits." 29 U.S.C. § 1054(g)(1), (2) (Supp. II 1984) (amending 29 U.S.C. § 1054(g) (1982)).

The legislative history explains that this amendment:

generally protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time a plan is amended and participants who subsequently meet the preamendment requirements. The bill does not, however, prevent the reduction of a subsidy in the case of a participant who, at the time of separation from service (whether before or after the plan amendment), has not met the preamendment requirements. The provision does not change any rules under which accrued benefits become vested.

S.Rep. No. 575, 98th Cong., 2d Sess. 28, *reprinted in* 1984 U.S. Code Cong. & Admin. News 2547, 2574.

This amendment has no effect on the case before us because the company did not attempt to amend the early retirement provisions. What-

ever effect the amendment might have with respect to "accrued benefits" in other circumstances does not change the outcome here.

**11.** A fiduciary is to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of: ... providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1) (1982).

**12.** [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A) (1982).

tionary authority with respect to the management of the plan. Hlinka attempts to illustrate such discretion when he alleges that "the company has used the provision to pick and choose favored employees for early retirement in order to avoid bearing the direct expense of providing 'golden parachutes.'" BSC counters this allegation, however, by reference to their sworn answers to the plaintiff's interrogatories. For the period 1983 through 1986, 2,952 70/80 retirement pensions were granted. Unlike the plaintiff, 1,766 individuals qualified under subparagraphs 2.6(a), (b) or (c) and lost their jobs due to plant shutdowns, layoffs or disability. The remaining 1,176 individuals retired under subparagraph 2.6(d) upon which Hlinka's claim is based. The retirements were granted under two special early retirement incentive programs to those employees who met the stipulated eligibility requirements. The first of these programs was a corporate-wide program offered in 1983. The program was offered to reduce the workforce on a voluntary basis. The second program in 1985, was only offered to the Bar, Rod and Wire Division of BSC. As in 1983, the program was designed to decrease the workforce during a period of depressed company economics. It can hardly be disputed that the initiation of these programs was a business decision rather than a fiduciary decision.

■ Hlinka argues that the pension administrator and the pension board acted arbitrarily and capriciously in their refusal to grant him a 70/80 retirement. This argument is without merit. A plan administrator and a pension board must administer the pension plan promulgated by the employer in accordance with their fiduciary duties pursuant to section 404 of ERISA, 29 U.S.C. § 1104. An award inconsistent with the plan's valid provisions would be a breach of those duties. Neither the plan administrator nor the pension board had the authority to override BSC's business decision concerning Hlinka's early retirement. The only recourse of the plan administrator and the pension board was to

deny Hlinka's request for an early retirement under the 70/80 provision. "Benefit determinations cannot be arbitrary and capricious as a matter of law if those decisions contain no element of discretion. An administrator who strictly adheres to the lawful terms of an employee benefit plan may not be found to have acted arbitrarily and capriciously." *Foltz v. U.S. News and World Report,* 613 F.Supp. 634, 639 (D.D. C.1985). Thus, the district court properly found that neither the plan administrator nor the pension board violated their fiduciary duties as stipulated in section 404 of ERISA, 29 U.S.C. § 1104.

Contrary to the findings of the district court in the case at bar, the District Court for the District of Delaware in *Shaw v. NVF Co., supra,* found that the company and the pension committee failed to discharge their fiduciary duties in accordance with ERISA provisions. The *Shaw* case was remarkably similar to the case before us. The court in *Shaw* analyzed a plan provision almost identical to subparagraph 2.6(d) in the case at bar. The plaintiff in *Shaw* also applied for and was denied by NVF and the pension committee retirement under the company's 70/80 retirement plan. While the facts of both cases are quite similar, the *Shaw* record, which is not before us, may suggest differences warranting different conclusions. To the extent that *Shaw* suggests a different interpretation of 29 U.S.C. § 1104, than we have made, however, we find the case unpersuasive.

## VI.

■ Finally, Hlinka contends that he was not afforded a full and fair review by the pension board in violation of section 503 of ERISA, 29 U.S.C. § 1133 (1982). He takes this position for two reasons. Firstly, he maintains that the composition of the pension board being company employees, did not satisfy the requirement of "appropriate named fiduciar[ies]" as required by 29 C.F.R. § 2560.503–1.[13] Section 408(c)(3)

---

13. The regulation states in pertinent part:

(1) Every plan shall establish and maintain a procedure by which a claimant or his duly

of ERISA, however, specifically provides that "nothing in ... this title shall be construed to prohibit any fiduciary from–(3) serving as a fiduciary in addition to being an officer, employee, agent or other representative of a party in interest." 29 U.S.C. § 1108(c)(3) (1982). Additionally, paragraph 8.1 of the BSC plan complied with the regulation because the plan identified the parties responsible for reviewing and rendering decisions on claim denials. More specifically, paragraph 8.1 stipulates that if a participant is dissatisfied with the plan administrator's decision, a request may be made for the General Pension Board to review the decision and the composition of such Board consists of officers and employees of the company.

■ Secondly, relying on *Grossmuller v. International Union, United Auto Aerospace and Agricultural Implement Workers of America, UAW, Local 813*, 715 F.2d 853 (3d Cir.1983), Hlinka alleges a denial of a full and fair hearing because neither he nor his attorney was permitted to appear before the pension board when his case was reviewed. The employee in *Grossmuller* alleged that he did not receive a full and fair review of the pension board's decision to terminate his disability benefits. His benefits were terminated because he had accepted employment as a bartender at a country club and therefore he was not disabled. The board's decision was based on evidence presented by a private investigator at one of the meetings. The board did not apprise the employee of what evidence was considered pertinent to his case. The employee appealed the board's decision and requested that he be permitted to appear before the board, but his request was denied. This court affirmed the district

court's holding that the employee had been denied a full and fair review of the denial of his benefits stating that "[i]f the fiduciary allows third parties to appear personally, the same privilege must be extended to the participant." 715 F.2d at 858. *Grossmuller* is distinguishable from the case at bar, because in the instant case there were no third parties at the board's meeting. Additionally, the *Grossmuller* case lacked a written claims procedure, and did not permit the employee to examine the materials submitted against him or to submit comments or rebuttal evidence. Hlinka had the opportunity to submit comments and rebuttal evidence. *Grossmuller's* holding pertained only to the situation wherein a third party is permitted to appear at a meeting and provide factual information which the absent claimant cannot refute. Disputed facts, however, were presented to the board in this case. As the district court noted, a blanket requirement that a petitioner or his attorney be permitted to attend a pension review committee cannot be found in case law or ERISA.

## VII.

In light of the foregoing discussion, the judgment of the district court will be affirmed.

BECKER, Circuit Judge, concurring:

I agree with the bottom line of the majority's opinion—that Hlinka is not entitled to relief—hence I join in the judgment. I write separately because I disagree with the majority's approach to the applicability to this case of ERISA's "full and fair review" provision, 29 U.S.C. § 1133 (1982). The majority has determined that there has been no violation of that provision without any discussion of the applicability of

---

authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may: (i) Request a review upon written application to the plan; (ii) Review pertinent documents; and (iii) Submit issues and comments in writing.

(2) ... the appropriate named fiduciary for purposes of this Section may be the plan administrator or any other person designated by the plan provided that such plan administrator or other persons are either named in the plan instrument or are identified pursuant to a procedure set forth in the plan as the person who reviews and makes decisions on claim denials.

29 C.F.R. § 2560.503–1(g) (1987).

§ 1133 to early retirement plans,[1] because it finds no procedural unfairness relating to Hlinka's opportunity to appear before the review committee. I think it important to make it clear not only that § 1133 applies to early retirement plans, and why, but also how § 1133 applies to the facts of this case.

At oral argument, counsel for appellees argued that the denial of benefits by the employer cannot be covered by the full and fair review provisions because these provisions only apply to accrued benefits. This argument, which the majority does not address, is incorrect. First, ERISA, in its definition section, defines "employee pension benefit plan" and "employee welfare benefit plan" very broadly. These definitions are clearly not limited to accrued benefit plans. *See* 29 U.S.C. §§ 1002(1), (2), (23). Second, § 1133 provides that "*every* employee benefit plan shall*" provide "full and fair review" (emphasis added). I believe that the breadth of the language in the definition and full and fair review sections demonstrates that early retirement benefits are covered by the full and fair review provisions. This conclusion is buttressed by the 1984 amendment to 29 U.S.C. § 1054(g) (Supp. II 1984), *see* Maj. Op. at n. 10, which explicitly provides protection for early retirement benefits in certain circumstances and therefore strongly implies that early retirement benefits fall within the general ambit of ERISA. Third, 29 C.F.R. § 2560.503–1(a) (1987) provides that the full and fair review provisions apply to all plans described in 29 U.S.C. § 1003, which broadly states that ERISA shall "apply to any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry or activity affecting commerce."[2] 29 U.S.C. § 1003(a). This 70/80 plan clearly satisfies § 1003(a). I therefore conclude that the full and fair review provisions must apply to early retirement benefit plans.

Most relevant to the facts of this case is the full and fair review provision's require-ment of a written articulation of "specific reasons" for the plan administrator's denial of benefits. 29 U.S.C. § 1133(1). Applying these principles to this case, I believe that Hlinka was deprived of a full and fair review of the denial of benefits, because the administrator failed to inform him of the specific reasons for the denial. In BSC's letter to Hlinka notifying him of the denial of benefits, it merely stated that "accommodation under the 70/80 pension provision requires mutual conditions which do not exist in your case and, therefore, I regret that your request is denied." The General Pension Board stated in its May 19, 1986, letter only that Hlinka was not "eligible" for 70/80 benefits, providing no further explanation, and in its July 15, 1986, letter only that "Bethlehem Steel has not indicated that it considers that your retirement would be in its interest nor has it approved an application for retirement under mutually satisfactory conditions as would be required for eligibility."

At no time was Hlinka informed of the specific reason for the denial of benefits. If it were not for the subsequent expression of reasons provided by BSC in pretrial discovery, see discussion *infra*, I would remand this case to the General Pension Board for explanation of the specific reason for denial of Hlinka's request for benefits. *See also Groves v. Modified Retirement Plan for Hourly Paid Employees of Johns Mansville Corp.*, 803 F.2d 109, 114 (3d Cir.1986) (district court's holding that statement that disability was "insufficient to qualify" for benefits under the plan did not satisfy § 1133 specificity requirement upheld on appeal).

As the majority points out in footnote 7, BSC's reason for denying Hlinka's request for 70/80 benefits came to light during pretrial discovery. BSC denied Hlinka's request for 70/80 benefits "because of his extensive and unique technological expertise related to the project to which he was assigned." This statement clearly satisfies the specificity requirement of § 1133 (and

---

**1.** It would appear that the majority thinks that the full and fair review provisions are applicable, because it considers the question whether the provisions were violated.

**2.** Section 1003 also provides for exceptions to its broad coverage, but none of those exceptions are pertinent to this case. *See* 29 U.S.C. § 1003(b).

is consistent with any reasonable interpretation of "in its interest") and therefore it would be a futile exercise to remand the case at this time. However, I would hold that, in future cases, the plan administrator is required to articulate specific reasons in any communication denying benefits under an early retirement provision like 2.6(d).[3]

The requirement of an expression of specific reasons does not of itself inhibit the employer's business judgment, although the plan may restrain the employer's range of decisionmaking options, depending on the proper contract construction of the term "in its interest." [4] The specific reasons requirement does, however, by the mere force of requiring articulation, play a role in ensuring that the employer will focus on its responsibility and will act with fidelity to the agreement and not for some impermissible reason, e.g., race or sex discrimination, and will facilitate judicial scrutiny of "full and fair review." However, there is no such problem in this case, because the reason evinced would satisfy any reasonable construction of "in its interest."

---

3. I note in this regard that I am troubled by the majority's discussion in part III. In my view, in the absence of a statement of a specific reason for denial of benefits, a genuine issue of material fact will likely exist as to whether full and fair review was provided. I believe that in such situations in the future, the district court should deny a motion for summary judgment and should allow the plaintiff to proceed with discovery.

4. For example, there may be agreements where that term will be properly construed to mean business interest or legitimate business interest.