**Richard NAZAY, Sr., Plaintiff,**

v.

**L. MILLER, Bethlehem Steel Corporation, and Michael P. Dopera, Secretary Insurance Board Bethlehem Steel Corporation, Defendants.**

**Civ. A. No. 1: CV–90–1641.**

United States District Court,
M.D. Pennsylvania.

April 19, 1991.

---

Robert J. Mulderig, Carlisle, Pa., for plaintiff.

Robert S. Mirin, Harrisburg, Pa., Joseph Mack, III, Barbara K. Ross, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

The plaintiff, Richard Nazay, Sr., a retired employee of Bethlehem Steel Corporation (Bethlehem), brought this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, to recover for the partial denial of hospitalization benefits under Bethlehem's health insurance plan for retirees. The action had been filed before a Pennsylvania District Justice but was removed to this court by the defendants, L. Miller, a Bethlehem employee at its Steelton plant involved in insurance matters, Michael P. Dopera, the Secretary of the Insurance Board under the Social Insurance Plan of

Bethlehem Steel Corporation and Subsidiary Companies, and Bethlehem. We have jurisdiction pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(e).

We are currently considering the defendants' motion for summary judgment and what the plaintiff has styled his "counterclaim for summary judgment." These cross-motions will be evaluated under the well established standard. *See Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989).

The facts are not in dispute. For many years Nazay has had a bad heart and in the months prior to his hospitalization in June of 1989, he was experiencing shortness of breath. The plaintiff consulted two physicians who determined that he had to be hospitalized for treatment with a drug which would strengthen his heart muscle. Plaintiff was in the hospital from June 22, 1989, to June 29, 1989. The bill came to $7,438.39.

It was subsequently submitted for payment to Bethlehem's health insurance plan for pensioners, a welfare benefit plan within the meaning of ERISA. The treatment was found to be medically necessary and there was no dispute about the amount of the charges but the Insurance Board refused to pay the entire bill. It deducted $2231.51, thirty per cent, because plaintiff had failed to obtain precertification of the hospital stay in violation of the following provision of the insurance plan.[1] Captioned "Precertification Procedures and Concurrent Utilization Review," it provides, in relevant part, as follows:

> Whenever you ... are to be admitted as an inpatient on a non-emergency basis to a Hospital ... a precertification request must be processed *prior* to the admission....
>
> ....
>
> If you are admitted to any facility requiring precertification on an emergency basis, the certification process must begin within 48 hours of the admission (or as soon as reasonably practical under the

circumstances) unless such requirement is waived by the Plan Administrator.

> ....
>
> If you fail to obtain precertification or certification as described above and the admission or services rendered are determined to have been medically necessary, a penalty of an additional 30% of the Covered Expenses will be applied.
>
> If you fail to obtain precertification or certification as described above and the admission or services rendered are determined to have been not medically necessary, the admission or services rendered will be considered non-covered expenses and any charges incurred will be your responsibility.

(Summary Plan Description at p. 28, attached to the affidavit of Charles F. Collins) (emphasis in original).

The rule was adopted to reduce the risk of unnecessary medical care by allowing the Insurance Board to review proposed care before it takes place. The defendants therefore argue that the penalty cannot be considered arbitrary or capricious, the standard the defendants would apply to the Board's decision in light of the plan's delegation of authority "to interpret and construe the provisions of the Plan ... and to decide such questions as may arise in connection with the operation of the Plan." (Summary Plan Description, ¶ 2.28 at p. 47). *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115 (3d Cir.1990).

The plaintiff does not contest the application of this standard to the Board's decision at issue in the instant case. We will not make an issue of it either, since it appears that the Board's action cannot be justified even under this lenient standard of review.

The plaintiff's position is that the precertification penalty requirement violates "public policy" by arbitrarily and capriciously imposing a 30% penalty for what the defendants concede was medically necessary treatment. Plaintiff argues that the penalty is excessive and that it does not serve the Board's stated goal because the Board has the authority in any event to

---

1. The complaint before the district justice demanded $2,021.69. The defendants assert that this amount is in error. We will accept the defendants' amount as the correct one.

refuse to pay unnecessary medical costs. Thus, the penalty only serves to deprive plan participants of coverage to which they are entitled.[2]

■ The plaintiff's public policy argument fairly encompasses a claim that the Board's imposition of a penalty violates the fiduciary duties imposed upon it by ERISA pursuant to 29 U.S.C. § 1104(a)(1). That section provides, in pertinent part, as follows (brackets added):

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries;

(ii) defraying reasonable expenses of administering the plan....

The parties have not cited any cases dealing with the issue in the instant case nor have we been able to locate any cases construing precertification clauses under ERISA. We believe, however, that *Northeast Department ILGWU Health And Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147 (3d Cir.1985), provides some guidance on how to dispose of the parties' cross-motions.

In *Northeast*, the issue was which of two union benefit plans was responsible for the claimant's medical bills when both arguably provided coverage. Each plan had incompatible "other insurance" provision. One of the provisions was known in insurance law as an escape clause and the other as an excess clause. In determining how to coordinate the enforcement of these clauses under ERISA, the Third Circuit examined how state courts dealt with the issue under state insurance law. The court concluded that the majority of state courts would not enforce an escape clause as against an excess clause. It then determined whether the majority rule should be applied to an ERISA plan, having already

concluded that a clause which conflicts with ERISA cannot be enforced. In making this second determination, the court noted generally that "ERISA is a comprehensive statutory scheme designed to protect employees enrolled in pension and benefit plans," *id.* at 162, and that plan administrators must act in accordance with the fiduciary standard set out in section 1104, quoted above, to administer the plan in the best interests of the participants and beneficiaries. Applying the arbitrary and capricious standard, the court concluded that an escape clause violated that standard because it potentially conflicted with an important ERISA policy—"that employees enrolled in a benefit plan should not be deprived of compensation that they reasonably anticipate under the plan's purported coverage." *Id.* at 163 (footnote omitted). Accordingly, the court held that "escape clauses in ERISA covered employee benefit plans are unenforceable as a matter of law." *Id.* at 164.

In the instant case, therefore, a reasonable first step would be to determine how state insurance law deals with penalty provisions in precertification clauses. Although we are confident that these clauses have become common in recent years, we are unable to locate any cases construing them. There are decisions, however, dealing with notice provisions in liability insurance policies, which we believe are sufficiently analogous to precertification clauses to permit us to look to them for guidance.

Liability policies often contain notice provisions requiring the insured to notify the company within a certain period of time of an accident or a lawsuit or risk denial of coverage by the company. *See* Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R.4th 141 (1984). A significant num-

---

**2.** As further justification for his failure to precertify, the plaintiff also argues in his brief that his hospitalization was unexpected and at the time he was preoccupied with his physical condition. The record as a whole, however, shows that he could have precertified at some point during his admission or within a reasonable time thereafter but that he simply did not do so, and instead allowed the hospital to forward its bill to the Board in the normal course.

ber of courts have traditionally held that a failure to notify the company permits the latter to deny coverage regardless of whether it suffered any prejudice as a result. *Id.* However, other jurisdictions, including Pennsylvania, have parted company with this rule and have required a showing of prejudice before late notice will void the coverage. *See Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977).

We view the Pennsylvania rule as the better one in construing the ERISA plan at issue in the instant case. We also note that the notice provision and the precertification provision serve the same basic purpose—to permit the insurer to control expenditures by giving it early notice of potential claims. It is even easier to apply the Pennsylvania rule here because there are fewer complications in first party medical coverage. There are no liability issues or arguable prejudice that could arise from jury discretion in awarding damages for such items as pain and suffering. Rather, it is simply a situation where the plan owes the plaintiff coverage for costs associated with plaintiff's hospitalization which are easily ascertainable. Thus, although the rule arose in the context of liability insurance, we see no reason, other than a conflict with ERISA, why we cannot apply it here to first party health insurance.

■■■ We see no conflict with ERISA. In fact, a rule requiring prejudice before benefits can be denied is consonant with ERISA's goal of providing coverage which the participant reasonably anticipates receiving. As noted, the defendants have not argued that plaintiff's treatment was not medically necessary, or not covered by the plan, or that the charges for it were unreasonable. The only thing they can point to is the lack of precertification which, in the absence of any prejudice to the plan, is

insufficient to deny coverage the plaintiff was otherwise entitled to. In short, a provision imposing a blanket 30% penalty is arbitrary and capricious and cannot be upheld under ERISA.[3]

■■ The defendants have asserted, citing 29 U.S.C. § 1104(a)(1)(D), that ERISA mandates that plans be administered in accordance with "the documents and instruments governing" them. This is true but that subsection immediately goes on to provide that the plan documents control only "insofar as such documents and instruments are consistent with the [pertinent] provisions" of ERISA. (brackets added). We have shown above that the plan is inconsistent with ERISA. *See also Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 286 (3d Cir.1988) in which the Third Circuit stated: "A plan administrator and a pension board must administer the pension plan promulgated by the employer in accordance with their fiduciary duties pursuant to section 404 of ERISA, 29 U.S.C. § 1104. An award inconsistent with the plan's *valid* provisions would be a breach of those duties." (emphasis added).

■■ Defendants also argue that cost containment features of health and welfare plans cannot be subject to ERISA because they are business decisions which have not been carried out in a fiduciary capacity. We disagree.

The case cited by defendants, *Berger v. Edgewater Steel*, 911 F.2d 911 (3d Cir. 1990); *Hlinka, supra,* and *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075 (4th Cir.1989), are inapposite. They all dealt with special retirement provisions which permitted the employer to deny such benefits when the employer decided it was not in the employer's best interest. The plan administrators in those cases had no discretion to exercise and could do nothing but accept the employers' business decisions.

---

**3.** Plaintiff asserts in his brief in support of his "counterclaim for summary judgment" that the precertification clause was recently amended to provide a penalty of only $100 when precertification was not obtained for medically necessary treatment. Since plaintiff provided no record evidence to support this contention, we do not rely upon it in making our ruling. Further, we

have no occasion to consider whether such a penalty would be a valid way of obtaining cooperation. We do not dispute the defendants' position that the Insurance Board does have a legitimate interest in lowering health care costs by requiring precertification for even medically necessary treatment.

In the instant case, on the other hand, Bethlehem did not invoke any right under the plan to partially deny the plaintiff his medical benefits nor could that decision be characterized as a business decision. Rather, the decision to deny medical benefits was made as an interpretation of the plan by those on the Insurance Board charged with administering it. It therefore qualifies as a decision subject to the fiduciary requirements of ERISA.

We will issue an appropriate order.

### ORDER AND JUDGMENT

AND NOW, this 19th day of April, 1991, upon consideration of the cross-motions for summary judgment, it is ordered that:

1. The plaintiff's motion for summary judgment styled as a "counterclaim for summary judgment", is granted and the defendants' motion for summary judgment is denied.

2. Judgment is hereby entered in favor of plaintiff and against defendants in the amount of $2231.51, along with costs.

3. The Clerk of Court shall close this file.